RIDGLEY *v.* MOONEY ET AL.

[No. 2,284. Filed November 24, 1896.]

SALES.—*Breach of Contract.*—*Measure of Damages.*—In an action by the seller against the purchaser of personal property for a breach of the contract, where the title to the property had never passed to the purchaser, the measure of damages is the difference between the price fixed by the contract and the market value of the property at the time and place of delivery.

SAME.—*Pleading.*—*Complaint.*—*Breach of Contract.*—R entered into a contract with M by which R agreed to furnish M 500 cords of bark on or before November 1, 1893, the price to be governed by the ruling price in Cincinnati in the spring months of 1893, and such additional sum as it would require to deliver the bark to Columbus, Ind., over and above what it would cost to deliver the bark to Cincinnati. R prepared for market the 500 cords of bark, and at the time for delivery notified M that he was ready to ship the same; whereupon M repudiated the contract. *Held*, that R's complaint declaring upon a breach of the contract, averring that R, after the breach, sold the bark for the best price attainable, which was a specified sum less than he would have realized but for the breach, but does not allege the market value at Columbus when the

Ridgley *v.* Mooney *et al.*

default was made, or the expense of shipment and sale, is not suf-
ficient to withstand a demurrer.

Same.—*Breach of Contract by Purchaser.*—*Seller's Remedy.*—*Notice.*
—The seller, in an executed sale not accompanied by delivery, has
his choice of two remedies. He may retain the property for the
benefit of the purchaser, and subject to his orders, and sue for the
entire purchase price; or he may resell the goods and recover from
the purchaser the difference between the contract price and the
price of sale. But if the latter course be pursued, the seller, ex-
cept under peculiar circumstances, for example, where the goods
are of a perishable nature, is required to give the purchaser a pre-
liminary notice of the time and place of resale.

From the Bartholomew Circuit Court. *Affirmed.*

*E. S. Doolittle, Marshall Hacker* and *Chas. F. Remy,*
for appellant.

*Simeon Stansifer* and *Chas. S. Baker,* for appellees.

Reinhard, J.—The only error complained of in this
case is the alleged error of sustaining the demurrer to
the appellant's amended complaint. The complaint
alleges, in substance, that on the 26th day of October,
1892, the plaintiff and defendants entered into a writ-
ten agreement, a copy of which is filed with the com-
plaint, by the terms of which the plaintiff was to fur-
nish the defendants with 500 cords of 128 cubic feet,
or 2,400 pounds each, of prime chestnut bark, to be
peeled during the spring of 1893, and straightly and
solidly loaded in cars and consigned and delivered to
defendants at Columbus, Indiana, on or before Novem-
ber 1, 1893. In consideration thereof the defendants
were to pay the same price as the ruling price in
Cincinnati, in the spring months of 1893, together with
such additional sum as it would require to deliver
the same in Columbus, Indiana, over and above what it
would require to deliver it in the city of Cincinnati,
Ohio; that, confiding in the undertakings of the de-
fendant, as set forth in said agreement, the plaintiff,

in the spring of 1893, in the State of West Virginia, did peel and prepare for market 500 cords of chestnut oak bark of the quality, weight and measurement called for in said agreement; that in preparing said bark for market, as aforesaid, he expended a large sum of money, to-wit, $1,000.00; that in the city of Cincinnati, in the State of Ohio, in the spring of 1893, the ruling price of prime chestnut oak bark, of the quality, weight and measurement called for in said agreement and of the kind and quality that had been peeled and prepared for market by the plaintiff, as aforesaid, was $13.00 a cord; that thereafter, and long before the 1st day of November, 1893, the plaintiff had the 500 cords of bark ready for shipment to the defendants, and was ready and willing, and offered to ship and deliver the said bark to the defendants, in accordance with the terms of said agreement; and the defendants having full knowledge of all the facts, and of the plaintiff's offer and readiness to deliver said bark to the defendants, the latter notified plaintiff in writing, that they had no contract with plaintiff for any bark and would not receive any bark that plaintiff would ship or deliver them; and that defendants did not then and there, nor at any time, accept and receive said bark in accordance with the terms of the said contract; that owing to the said absolute refusal to accept said bark, the plaintiff was obliged to resell the same, and, thereafter, on the 1st day of August, 1893, did resell said 500 cords of bark, so remaining in his possession unaccepted and unpaid for as aforesaid, at and for certain sums of money, amounting in the whole to a much less sum of money, to-wit, the sum of $2,500.00 less than the amount of said sum of money so offered and agreed upon by the defendants for the same, and there was thereby a deficiency upon such resale of $2,500.00, over and besides the charges

attending such resale, amounting to a certain other sum of money, to-wit, $500.00, making in all $3,000.00; that in reselling said bark the plaintiff sold to realize as far as possible the unpaid purchase money due him for such bark from the defendants, and that he sold the same within a reasonable time and exercised due diligence, and by good faith tried to realize the best price he could for said bark, and did realize the best attainable price therefor at said time. Wherefore, etc.

The contract, a copy of which is filed with the complaint, is as follows:

"Agreement, made this 26th day of October, 1892, between J. F. Ridgley, of Milton, West Virginia, and W. W. Mooney & Sons, of Columbus, Indiana, witnessth: That said J. F. Ridgley agrees to furnish said W. W. Mooney & Sons with 500 cords of 128 cubic feet, or 2,400 pounds each, of prime chestnut oak bark, peeled during the spring of 1893, and to be delivered on or before the 1st day of November, 1893, at Columbus, Indiana. Said bark to be straightly and solidly loaded in cars and consigned direct to W. W. Mooney & Sons, Columbus, Indiana. In consideration whereof, said W. W. Mooney & Sons agree to pay said J. F. Ridgley the same price as ruling in Cincinnati in the spring months of 1893, and the additional sum that it would require to deliver said bark in Columbus, Indiana, over and above what it would require to deliver same in Cincinnati, Ohio.

"It is further agreed that Mr. Ridgley can increase this contract to one thousand cords instead of five hundred, by giving the said W. W. Mooney & Sons due notice of this in writing prior to February 1, 1893.

"Signed in duplicate day and year above mentioned.

J. F. RIDGLEY.

W. W. MOONEY & SONS."

It is the evident theory of the complaint that for the alleged breach of the contract on the part of the appellees, the measure of damages is the difference between the contract price and the price for which the bark was actually sold by the appellant.

In *Dwiggins* v. *Clark*, 94 Ind. 49, the law governing such cases was declared as follows:

"In actions by the vendor based upon such contracts as this, the measure of damages arising out of the state of facts shown by the complaint, and, therefore, the nature of the cause of action, is controlled by the question whether upon the facts the title to the property is regarded as having passed to the buyer or as still remaining in the seller. In the former case the seller is entitled to recover the contract price; while in the latter case he may recover damages measured by the difference between the contract price and the market price at the time and place of delivery."

The rule as above stated was applied by this court in *Neal* v. *Shewalter*, 5 Ind. App. 147, and *Shipps* v. *Atkinson*, 8 Ind. App. 505.

It is undoubtedly true that in many cases the vendor may, upon breach by the buyer, sell the property and recover the difference between the contract price and the selling price. This principle, we think, is also contingent upon the question whether the title of the property has passed to the purchaser or still remains in the seller.

The contract declared upon was an executory one. By its terms the appellant agreed to prepare for the market for appellees, 500 cords of bark of a certain quality, and deliver the same, on or before a certain date, at Columbus, Indiana. The complaint alleges that the plaintiff duly prepared the bark and notified the defendants that he was ready to ship the same, but that the defendants refused to accept or receive it,

stating that they had no such contract with him as he claimed to have.

But although the contract was executory it may have become so far executed as that the title to the property had passed to the purchaser, though possession was still retained by the seller.

In every case, whether the title to the property has passed to the purchaser or still remains in the vendor, if there has been a breach by the buyer, by refusing to accept the property and pay for it, the vendor has his remedy in an action for damages. Where the title has not passed, of course the seller still has the goods, and hence he is not damaged to the full value of the same. He can only recover, in such a case, whatever may be the loss sustained by him on account of the purchaser's default. This loss, as the cases cited above declare, is the difference between the price fixed by the contract, and the market value of the goods at the time and place of delivery, as provided in the contract. For additional authorities on this point see *McComas* v. *Haas*, 107 Ind. 512; *Pittsburgh, etc., R. W. Co.* v. *Heck*, 50 Ind. 303, 19 Am. Rep. 713; *Beard* v. *Sloan*, 38 Ind. 128. Where, as in the present case, the seller is, by the terms of the contract, required to ship to a certain place, and to receive, in addition to the contract price, the expense of shipment, doubtless the expense of getting the goods to the market and reselling the same should be added to the damages, for the object of the remedy given is to make the seller whole on account of the loss suffered by the default of the buyer.

In the case at bar, as we have seen, the contract price was the market value of the bark at Cincinnati, in the spring of 1893, "and the additional sum that it would require to deliver said bark in Columbus, Indiana, over and above what it would require to deliver same at Cincinnati, Ohio." It is alleged in the com-

plaint that the market value of such bark in Cincin-
nati, during the spring months of 1893, was $13 per
ton. This amount, then, $13.00 per ton, was the con-
tract price. If we add to this the additional expense
required to take the bark to market and sell it, and de-
duct from it its market price at Columbus, Indiana, at
the time it should have been delivered there, which
was not later than November 1, 1893, we obtain the
measure of the damages to which the appellant is en-
titled for the alleged breach of contract, provided the
title of the bark did not pass to the appellees. As the
appellant had the option of delivering the bark at any
time after it was ready for shipment, not later than
November 1, 1893, it follows, we think, that he was en-
titled to fix the market price at the time he was ready
and offered to ship to Columbus. If we assume (what is
not alleged), that this was at or about the time he al-
leges he sold the bark, viz., August 1, 1893, the value
of the bark in Columbus, Indiana, at or about that
time, would be the proper criterion for the establish-
ment of the market value of the property. There is no
averment in the complaint as to the place where the
appellant sold the bark and we are unable to see,
therefore, how the price for which he sold could in any
way establish the market value of the bark in Colum-
bus, even if we assume that he sold it for its full value
in the market to which he took it. For anything that
is averred he may have sold it in Europe, or in West
Virginia where it was prepared, and we cannot as-
sume that bark of the quality for which the contract
calls, was of the same value in every market of the
world. The value must be the market value at the
time and place of delivery, as we learn from the de-
cisions of our own courts heretofore cited in this
opinion, and as is held in the courts of other states.
The market price of another place and at another time

would not be material, unless it tended to prove the value at that time and place. "A reasonable range of time is sometimes allowed in which to average the price, so that sudden, unnatural, and spasmodic values, not indicating the real state of the market, may not prevail." 21 Am. and Eng. Ency. of Law, 579.

We do not wish to be understood as holding that appellant was bound to take the bark to Columbus, if he could have found a better market elsewhere, either at home or abroad. But in the latter event he should have averred this fact in direct terms and shown by the facts set out that he obtained for it the best market price.

From what we have said follows the inevitable conclusion, we think, that, if the facts alleged make a case in which the title to the property had not passed to the purchaser at the time of the breach, the complaint is fatally defective in failing to show the market value of the property when the default was made, and the expense of shipment and sale, as elements essential to the measurement of the damages to which the appellant would be entitled.

Appellant's counsel concede that the title to the bark never passed to the purchaser. This concession was possibly necessitated by the fact that, under the averments, the appellant must be held to have treated the property as his own when he sold it, not as the agent of the vendee and for his account, but in the exercise of such acts of ownership over it as would conclusively indicate that he regarded himself still as the owner. The concession, whatever may have prompted or induced it, is fatal to the appellant's right of recovery, for, as we have shown, the appellant has wholly failed to aver such facts as would enable

the court or jury to determine what damages he has sustained.

If, however, we should disregard the concession of the appellant that the title to the bark had not passed to the appellees when they made default, and if it could be said from the averments of the complaint that the appellant treated the property as belonging to the appellees and that he sold it as their agent and for their account, it would still remain to be determined whether the appellant has pursued a course that will entitle him to recover in the present action.

In such a case he would have the choice of one of two remedies: He could retain the property for the benefit of the appellees, and subject to their orders and sue them for the entire purchase price; or he could sell the goods as he did and recover from the appellees the difference between the contract price and the price of the sale. *Pittsburg, etc., R. R. Co.* v. *Heck, supra*; Benj. Sales (Corbin's Am. Ed. 1889), section 1165, and authorities cited in note 3. If, however, he chooses to pursue the latter course, he must manifest his election to do so, by a preliminary notice that he intends to sell and hold the purchaser for the loss.

The case of *Redmond* v. *Smock*, 28 Ind. 365, is decisive of the point in our own State. There the plaintiff had sold to the defendants a stock of goods, together with an unexpired lease on a storeroom in which they were situated, for which payment was to be made in the future. The breach assigned was that the defendants refused to make the payments and that they had abandoned the lease, storeroom and goods, and repudiated the contract. The action was for damages for the loss of the profit of the sale of the lease, the decline in the value of the goods, and expenses incurred in making a resale, etc. The Supreme Court held that the taking possession of the goods by the

plaintiffs and treating them as their own and selling them in their own names amounted to a rescission of the contract, and then said:

"If the plaintiffs had, upon the refusal of the defendants to receive and pay for the goods, given them notice that they, the plaintiffs, should sell the goods for the plaintiff's account, and hold them responsible for any deficiency on the resale, and for the expenses of keeping and reselling the articles, the plaintiffs would, perhaps, have been authorized to sell the goods in the usual way of disposing of such property, but in the absence of any notice whatever of any such intention, the subsequent sale by the plaintiffs was a rescission of the contract."

In this class of cases the seller has a lien on the goods for the purchase money which he may enforce by a resale. The object of the notice of the intention to sell seems to be to hold the purchaser for the deficiency. The notice must be a reasonable one, and what is a reasonable notice depends upon the circumstances of each particular case. See 21 Am. and Eng. Ency. of Law, 597, note 1.

In *Holland* v. *Rea*, 48 Mich. 218, 223, 12 N. W. 167, it is said that "it is now generally assumed that where the agreement is silent in regard to it and no special incidents appear to contend for it and where the extent of the vendee's liability is not to be unalterably decided by the price obtained, no notice of the resale itself is necessary. On the other hand it is held by high authority that to entitle the vendor to proceed by resale instead of rescission or by action for the whole agreed price or actual consideration, he must manifest his election by preliminary notice that he intends to sell and hold the vendee for the loss, or notice to that effect." Whatever relaxation of the rule may have been made by the decisions of the

courts, we feel bound by the holding in our State that in such a case a preliminary notice is required. Mr. Sutherland, in his valuable work on the law of damages, states the rule to be that the vendor in such a case as this may resell the property within a reasonable time after notice to the vendee of his intention to resell, the resale being made on the theory that the property is that of the vendee retained by the vendor as a means of realizing the contract price, the seller acting as the agent of the vendee, and that after the giving of the notice of the vendor's intention to sell, no notice of the time and place of the resale is necessary to be given, but that it must be made according to the usage of trade. Sutherland on Dam., 2 Rev. Ed. 1893, section 647. He cites a large number of cases in support of the rule requiring notice, although he says in the same connection that there are some authorities to the effect that if the buyer has notice of the facts which give the vendor the right to resell and the former absolutely refuses to comply with his contract, no notice of an intention to resell is necessary. The only authorities he cites in favor of this view are *Waples & Co.* v. *Overaker & Co.*, 77 Tex. 7, 13 S. W. 527; *Ullman* v. *Kent*, 60 Ill. 271. There are doubtless other cases which he might have cited in support of it, but we think the weight of authority is on the side of the doctrine that, except under peculiar circumstances, for example, where the goods are of a perishable nature, the seller is required to give a preliminary notice of his intention to resell.

In Kerr's Benjamin on Sales the law is thus stated:

"It is the duty of the seller to give notice to the buyer of his intention to make the resale. But it is not essential that he should notify the buyer of the time and place of sale." 2 Benj. on Sales (1888), p. 780, note to section 1077.

Tiffany on Sales (1895), section 122, says: "Notice of intention to exercise the right of sale should be given, though cases may arise where, owing to the perishable character of the goods, or other circumstances, notice might be dispensed with. Notice of the time and place of sale, however, is not essential," citing, among other cases, *Redmond* v. *Smock, supra.*

Chalmers on Sales, section 48, states the law as follows: "Where the goods are of a perishable nature, or where the unpaid seller gives notice to the buyer of his intention to resell, and the buyer does not within a reasonable time pay or tender the price, the unpaid seller may resell the goods and recover from the original buyer damages for any loss occasioned by his breach of contract."

Whatever may be the true theory of the complaint, therefore, in the present case, as to whether the title to the bark had passed to the appellees or was still in the appellant when the alleged breach occurred, the facts alleged do not state a valid cause of action. If the title remained in the appellant, he could have sued for and recovered the difference between the contract price and the market value of the bark, at the time and place of the sale. If he elected to treat the property as that of the appellees, he could have retained it for their use and sued for the entire purchase price, or he could have resold the property as the agent of the appellees, having first given them notice of his intention to do so. As the appellant has failed to bring himself within the lines of either of these remedies, the complaint does not state a good cause of action, and the court below did not err in sustaining the demurrer.

Judgment affirmed.