# ATKINS *v.* KATTMAN.

[No. 7,486. Filed January 26, 1912. Rehearing denied April 18, 1912.]

1. PLEADING.—*Complaint.—Theory.*—To be sufficient, a pleading must proceed on a single definite theory and be good on that theory. p. 237.

2. PLEADING.—*Complaint.—Theory.—General and Specific Averments.*—The theory of a complaint will be ascertained only from its scope and tenor, and a general averment must yield to specific averments. p. 237.

3. DAMAGES. — *Complaint.—Averments.—Sufficiency.*—A pleading which fails to allege that the complaining party is damaged, and contains no averment of facts from which an inference of damages can be forced, is insufficient as a complaint for damages. p. 237.

4. PLEADING.—*Complaint.—Specific Performance.—Construction.*—Where a complaint was entitled a "Complaint for Specific Performance" and contained no allegation that the plaintiff was damaged, and demanded that defendant be required to perform

his contract, it will be construed as proceeding on the theory of an action for specific performance. p. 238.

5. SPECIFIC PERFORMANCE.—*Contract for Sale of Corporate Stock.* —*Complaint.*—*Averments as to Performance.*—A complaint seeking to compel specific performance of a contract wherein plaintiff agreed to sell defendant certain corporate stock and release a claim that he held against the corporation, was insufficient for failure to allege that a tender of the stock was made to defendant before the action was brought, and is not cured by a general allegation of plaintiff's performance and willingness to perform. p. 238.

6. CONTRACTS.—*Contract by Correspondence.*—*Validity.*—*Meeting of Minds.*—Where defendant wrote to plaintiff that if he would give an option for ninety days on his stock, defendant would be willing to guarantee him $300 for it with the understanding that the corporation's indebtedness to plaintiff would be transferred with the stock, and plaintiff replied that he would sell his stock for $300 net to him, without commission, and that on completion of the sale and payment of the purchase price, he would release his claim against the corporation, plaintiff's reply was not an unconditional acceptance of defendant's proposition so as to constitute a meeting of the minds of the parties and there was no valid and enforceable contract between them. p. 239.

From Superior Court of Marion County (72,343); *Vinson Carter*, Judge.

Action by Harry E. Kattman against William A. Atkins. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Gavin, Gavin & Davis*, for appellant.

*Thomas D. McGee, Edward D. Reardon* and *James H. Drew*, for appellee.

ADAMS, J.—It appears from the complaint in this action that plaintiff (appellee) was the owner of thirty-one shares of the capital stock of the Hoosier Gas Machine Company, an Indiana corporation, with its offices and place of business at Indianapolis, Indiana; that plaintiff also held a claim for $325 against said company, for work and services performed by him; that defendant (appellant) was a large stockholder in said company, and was desirous of obtaining all the stock of said company, and getting the same under

his sole control; that on March 13, 1906, defendant wrote to plaintiff, at El Paso, Texas, where he was temporarily residing, and after detailing the financial difficulties of the company, continued:

"I understand you have $300 due you from the Company, besides your stockholding, and if we could reach a satisfactory understanding, I might be able to dispose of your stock, and at the same time clear the Company of the $300 obligation to you. We will have all our stock machines sold, I expect, in sixty to ninety days, as we have five on hand at this time, and would say that if you will give me an option for ninety days on your stock, I would be willing to guarantee you $300 for it, with the understanding that the indebtedness the Company owes you will be transferred with it."

This letter was received by plaintiff, and answered on March 19, 1906, as follows:

"I am in receipt of your favor of the 13th, and note what you say in regard to your being willing to guarantee me $300 for my stock, on condition that I give you a ninety days option on the same at that price, and further agree to release my claim against the Company for the amount it now owes me. I herewith enclose option and agreement to that effect. When you are in a position to close this matter, please advise me, and I will have stock certificates delivered to you."

The enclosure referred to is as follows:

"I will sell my stock in The Hoosier Gas Machine Company of Indianapolis, Indiana, amounting to 31 shares, for the sum of $300, net to me, without commission, and further agree upon completion of such sale, and payment of such purchase price, to me, to release all claims I may now have against said Company, amounting in the aggregate to about $325; this option to expire ninety days from date."

It is also averred in the complaint that the plaintiff within ninety days indorsed his certificates of stock in blank, and delivered them to George R. Brown, of Indianapolis, to be turned over to defendant, on the payment of $300, and that plaintiff was notified within ninety days.

The complaint further states "that since the making of the defendant's offer, and it acceptance by this plaintiff, the affairs of said Hoosier Gas Machine Company, owing to causes of which the plaintiff is uninformed, became involved and its business decreased, and its stock declined in value, until it is now practically worthless. And the plaintiff further says that though said ninety day period has elapsed and though the plaintiff performed all and singular the conditions of said contract on his part to be performed, the said defendant, though often demanded to do so, has refused to pay and still refuses to pay the sum of $300, and refused to perform the conditions of the said contract. And the plaintiff says that he has at all times, since the making of said contract, been willing and ready and desirous of performing the conditions of said contract incumbent on him, and is now ready and willing to perform all and singular the conditions of the said contract. Wherefore, the plaintiff prays that said defendant be required to perform said contract, and pay the plaintiff the sum of $300, with interest thereon from the 13th day of June, 1906, and for such other relief as justice and equity may require."

The defendant demurred to the complaint for want of sufficient facts to constitute a cause of action against him. Demurrer was overruled, and the cause put at issue by an answer in denial. Trial by the court, and on request the court made a special finding of facts, and stated conclusions of law thereon. The first conclusion of law stated that plaintiff was not entitled to specific performance; and the third conclusion was that plaintiff was entitled to recover the sum of $300 for the breach of the guarantee. Exception was taken to the overruling of the demurrer to the complaint, and to the second and third conclusions of law stated on the facts found, which constitute the errors assigned and relied on for reversal.

The important and controlling question presented by the record in this case relates to the sufficiency of the complaint

to state a cause of action. Preliminary ·to this, however, it is necessary to determine the theory of the complaint to ascertain what the action is for, and what relief is sought.

It is a familiar rule of law that requires a pleading 1. to proceed on a single definite theory, and to be good on that theory, if at all. *Kentucky, etc., Cement Co.* v. *Cleveland* (1892), 4 Ind. App. 171, 176, 30 N. E. 802.

The theory of a complaint will be ascertained only from its scope and tenor. A general averment must yield to specific averments, but the pleader is not at liberty 2. so to frame his pleading as to be open to different constructions, and then take his choice between them. 1 Hogate, Pl. and Pr. §337.

The complaint in the case before us is in a single paragraph, and is either on the theory of an action for specific performance of an alleged agreement, or for damages arising out of a failure to perform. It could not be for both. Combining in the same paragraph of a complaint a suit in equity for specific performance and an action at law for damages would be violative of the elementals of pleading.

We are not aided by the brief of appellee in resolving this question, for appellee argues both ways, with much plausibility, and is seemingly content to have this court determine the theory of his pleading. On the other hand, the appellant, with equal candor, but clearly within his rights, insists that the theory of the complaint is not controlling, as the complaint is bad on any theory.

We do not think the complaint states, or was intended to state, a cause of action for damages. It will be observed that it contains no allegation that plaintiff has been 3. damaged, and no demand is made for damages. An action for damages, without an allegation that the complaining party is damaged, would be clearly insufficient for obvious reasons. It is, however, averred in the complaint that after the acceptance of appellant's offer the business of the company decreased, and the value of the stock

declined until it was worth practically nothing.   This averment does not state facts from which an inference of damages would be forced.   A contrary inference would be more likely to arise.   Assuming that the stock was not only practically worthless, but was wholly worthless, the company having assets only sufficient to pay its debts, appellee's claim would be worth its face, and he would not be damaged by failing to get $300 for a claim worth $350.

We think the theory of the complaint in this case is for specific performance.   It is entitled "Complaint for Specific Performance", and the demand is that defendant be required to perform his contract.   In the court below the case was clearly tried on that theory, and in its conclusions of law the court stated that plaintiff was not entitled to specific performance of the contract. Does the complaint then state a cause of action for specific performance?   Without giving the complaint a meaning which its words do not fairly import, and without ignoring the theory followed in the trial, this question must be answered in the negative.   Oölitic Stone Co. v. Ridge (1908), 169 Ind. 639, 644, 83 N. E. 246, and cases cited.

We think the complaint as a complaint for specific performance is defective in several particulars.   It is insufficient in that there is no averment that a tender of the stock was made to appellant before bringing the action.   As we have seen, an action for specific performance is an equitable proceeding, and before performance will be decreed, or a complaint therefor held good, it must appear that the complaining party, if he elects to treat the agreement as executed on his part, must aver full performance by himself and a refusal to perform by the other party, upon tender and demand being made, or a sufficient excuse shown for failure to make tender.   In the absence of such averment, no right is shown for specific performance in favor of the vendor, or that the contract price shall be

the measure of damage. The general allegation of performance and willingness to perform will not supply the omission. *Newby* v. *Rogers* (1872), 40 Ind. 9, 12; *Dwiggins* v. *Clark* (1884), 94 Ind. 49, 56, 48 Am. Rep. 140; *Burke* v. *Mead* (1902), 159 Ind. 252, 263, 64 N. E. 880. To hold otherwise in this case would be to permit appellee to retain his stock, his claim against the company and his judgment against appellant.

In *Garr Scott & Co.* v. *Fleshman* (1906), 38 Ind. App. 490, 492, 77 N. E. 744, 78 N. E. 348, this court said: "It is established in this State that in all cases of contracts for the sale of personal property, when it has any market value, the vendor, before he can recover from the vendee the contract price, must have delivered the property to the vendee, or have done such acts as vested the title in the vendee, or would have vested the title in him, if he had consented to accept it; for the law will not tolerate the palpable injustice of permitting the vendor to hold the property and also recover the price of it."

Again in *Shipps* v. *Atkinson* (1894), 8 Ind. App. 505, 507, 36 N. E. 375, this court said: "A repudiation of the contract by the purchaser relieves the seller from further compliance with the contract on his part so far as to enable him to maintain an action for damages for the breach of the contract, but in order to sustain an action for the contract price as upon an executed contract, he must, upon his part, comply entirely with the contract."

Another and vital question arising on the complaint is, Do the letters set out in the complaint show a contract of any kind? If there was a contract, there must have 6. been a meeting of the minds of the parties; there must have been an absolute proposition submitted by one, and an unconditional acceptance by the other. Whether there was such a proposition and such an acceptance must be determined from the letters. Appellant wrote to ap-

pellee: "If you will give me an option for ninety days on your stock, I would be willing to guarantee you $300 for it, with the understanding that the indebtedness the Company owes you will be transferred with it." Appellee replied: "I will sell my stock   *   *   *   for the sum of $300, net to me, without commission, and further agree upon completion of such sale, and payment of such purchase price, to me, to release all claims I may now have against said Company, amounting in the aggregate to about $325; this option to expire ninety days from date."

An examination of the letters will disclose that the proposition of appellant was not unconditionally accepted, but a counter-proposition was made by appellee. Appellant, for a ninety days' option on the stock, agreed to guarantee $300, with the understanding that appellee's claim should be transferred with it. Appellee offered a ninety days' option from the date of his letter, to sell his stock for $300 net, and on payment, to release his claim against the company. In the proposition of appellant, the claim was to be transferred with the stock; in appellee's proposition, it was to be released after the purchase price of the stock had been received.

In the case of *Cartmel* v. *Newton* (1881), 79 Ind. 1, 8, Judge Elliott, speaking for the court, said: "A modified acceptance of a proposition cannot make a valid contract. The appellant was entitled to have his proposition accepted as he made it. A proposition is either accepted or rejected, and a modification is a rejection. Of course, the parties may subsequently agree upon a modification of the original proposition; but until the person who makes the proposition assents to the modifications asked by the party to whom the proposition is made, there is no contract. Until then there is no meeting of the minds, which is always indispensably essential."

Measured by the rule here announced, there was no valid and enforceable contract between the parties.

The judgment is reversed, with instructions to the lower court to sustain the demurrer to the complaint.

NOTE.—Reported in 97 N. E. 174. See, also, under (1, 4) 31 Cyc. 84, 85; (2) 31 Cyc. 85; (3) 13 Cyc. 174; (5) 36 Cyc. 779; (6) 9 Cyc. 267. As to the essential elements of a bill to enforce an agreement for the sale of stock, see 135 Am. St. 700.