[No. 3724.]

## McCrea v. Ford.

1. SALE—*Merchant's Stock in Bulk—Executory Contract—Effect Upon the Title.* Sale of a merchant's stock in bulk,. to be consummated only after compliance with the statute (Rev. Stat., secs. 2678, 2679). Though possession is delivered, the title remains in the vendor.

2. —— *Purchaser Refusing to Proceed—Vendor's Rights.* Where the purchaser of a merchant's stock, in bulk, having made a deposit and received possession, refuses to complete the purchase and surrenders the goods, the seller, if he would insist upon his right, must hold all the goods ready for delivery upon payment of the residue of the stipulated price. If he resumes business and disposes of a substantial part of the stock he can neither enforce specific performance nor demand damages.

And the mere acceptance of possession waives the right to specific performance.

3. —— *Damages.* Where, in such case, the seller is entitled to damages he ordinarily recovers the difference between the contract price, and the market value at the time and place of delivery.

4. —— *Purchaser's Action for Deposit.* The purchase of a merchant's stock is rescinded by the purchaser for alleged frauds of the seller inducing the purchase. He surrenders possession, which the vendor accepts, resuming business and disposing of a substantial part of the stock. The purchaser recovers his deposit.

5. PLEADINGS—*Judgment Upon.* Where the complaint exhibits a cause of action and there is no counter-claim for the damages to which, alone, as appears by the answer, defendant is entitled, the plaintiff may have judgment upon the pleadings.

6. —— *Construed.* The answer as to a certain sum demanded in the complaint averred that defendant "has not sufficient knowledge upon which to base a belief and prays strict proof in respect thereto." Held sufficient to raise an issue.

7. INTEREST—*When Allowed.* Executory sale of a stock of merchandise and a deposit made by the purchaser. The latter alleging fraud upon the part of the seller abandoned the sale and sued for his deposit. He was allowed interest from the date of the sale.

8. APPEALS—*Partial Error—Judgment.* The judgment being found excessive, the cause was remanded with directions to the court below to enter judgment for the sum found to be due, and award him a new trial as to the residue.

*Appeal from Denver District Court.* HON. GREELEY W. WHITFORD, Judge.

Mr. HUGH BUTLER, for appellant.

Mr. CHARLES C. BUTLER, for appellee.

CUNNINGHAM, Presiding Judge.

On April 20, 1910, appellant and appellee entered into an agreement whereby the former was to sell and the latter buy a stock of drugs which appellant owned in the city of Denver. By the terms of this agreement Ford, the appellee, was to pay for the drug stock the total sum of $9,400, $2,500 of this sum to be paid in cash, the balance upon the delivery of a bill of sale by appellant to appellee. The bill of sale was to be delivered after the requirements of the statute relating to the sale of goods in bulk had been complied with. The statute referred to in the agreement was presumably sections 2678-9 R. S. It required at least five days to comply with the conditions of this act. Appellee entered into possession of the stock of goods on April 20, 1910, at which time he paid appellant $2,500. Twenty-four hours thereafter, professing to

believe that appellant had made divers and sundry false and fraudulent representations concerning the stock of goods, whereby he, appellee, had been misled and swindled, he demanded that appellant take back the stock and repay to him the $2,500. Appellant alleges in his answer that he at first refused to consider this demand, but he admits he did take charge of the store and continued to run it in all respects as though no sale had been made or contemplated, buying new stock and selling at retail in the customary manner. On May 6, Ford, the appellee, hereinafter referred to as plaintiff, brought suit against McCrea, the appellant, hereinafter referred to as defendant, to recover the $2,500 which he had paid on the purchase price of the stock, and for $127.04, which plaintiff alleged he had placed and left in the cash drawer of the store from his own private funds. The complaint contains sufficient allegations to sustain a case of fraud and deceit, and, if true, justified the plaintiff in refusing to carry out the agreement, and the judgment as prayed for. Defendant denied the material averments touching the misrepresentations which he is alleged to have made, but admitted having taken charge of the stock of goods, and adding thereto by making such purchases as were necessary to properly maintain the business, and he admitted he had continued to run the store in the customary manner up to the time of filing his answer, July 16, 1910. But defendant averred that he took charge of the store and conducted it in the manner stated, wholly in the interest of appellee, and to prevent the loss which would have ensued had the business been interrupted by closing the store. Defendant offered, in his answer, to account to plaintiff for all sales made, and to turn over the stock upon payment of the balance due on the purchase price, and upon the further payment of a reasonable compensation for his, defendant's, services and reimbursement for the moneys by him paid out for new goods. Appellant

prayed that the suit be dismissed and for his costs. He asked for no other relief whatever.

When the case was called for trial plaintiff moved for judgment on the pleadings, his motion was granted, and judgment for the full amount prayed for rendered against defendant. From this judgment defendant brings the case here on appeal.

1. The contract of sale is clearly executory, since defendant had not transferred the title by giving bill of sale, as required by its terms, and the balance of the purchase price had not been paid at the time plaintiff sought to rescind the agreement. The title to the stock of goods still remained in the defendant, as that was the evident intention of the parties, disclosed by the contract, and, notwithstanding the fact that plaintiff had taken possession pending compliance with the statute hereinbefore mentioned, after which only the transfer of title was to be made and balance of purchase price paid.—1 Meachem on Sales, secs. 476, 477. Under these circumstances defendant's remedy, if the breach was wrong and therefore actionable, was in damages. The title of the goods remaining in the defendant, and he having retaken possession, he could not maintain an action for specific performance of the contract.—*Sour Lake Co. et al. v. Deutser F. Co.,* 39 Tex. Civ. App., 86, 94 S. W., 188; *Ridgley v. Mooney,* 16 Ind. App., 362, 45 N. E., 348; *Dill v. Munford,* 19 Ind. App., 609, 49 N. E., 861; *Murphy Co. v. Exchange Bank,* 76 Neb., 573, 107 N. W., 845; *American H. & L. Co. v. Chalkley,* 101 Va., 458, 44 S. E., 705.

The answer admits the receipt and retention of the $2,500 paid upon the purchase price of the store. As the contract, for reasons already pointed out, was executory, and the title to the goods had not passed from the vendor, he was in no position to retain this sum as purchase money; no purchase had been consummated. He could retain it, if at all, as and for damages, which damages

ordinarily would be measured by the difference between the market value of the property at the time and place of delivery, and the price fixed in the contract.—*Funke v. Allen,* 54 Neb., 407, 74 N. W., 832; *Ridgley v. Mooney, supra.* But in this action the defendant did not counterclaim for damages; he contented himself, as we have seen, with a prayer for a dismissal of the complaint with costs. Indeed, by his answer, defendant denied that the stock and fixtures covered by the agreement would not invoice $14,000, the sum he is charged in the complaint with having represented to plaintiff they were worth, but $4,600 more than the purchase price agreed upon. Hence, his damage, if his answer be true, could in no event have been more than nominal, as plaintiff, upon abandoning the contract, placed the defendant back in the identical position occupied by him prior to and at the time plaintiff took possession of the stock, which possession, as we have said, was held for but twenty-four hours. At least, plaintiff alleges that he placed the defendant in the same position that he was in before the contract was entered into, and this allegation is not denied in the answer.

Viewed from the standpoint most favorable to defendant, the record discloses that plaintiff has been guilty of breaching an executory contract, without in any manner occasioning defendant damages. Having admitted that he has $2,500 of plaintiff's money, and making no counter-claim against him for damages, nothing remained for the trial court to do but enter judgment against the defendant for that sum.

2. It is contended with much plausibility on behalf of appellee that notwithstanding defendant's allegations in his answer that he protested against the abandonment of the contract by plaintiff, and declined to consent to its rescission, nevertheless, by his action in retaking the goods and exercising acts of ownership over them, which he admits in his answer, he must be held to have con-

sented, and thereby waived at least his right to either sue upon the contract or bring an equitable action to enforce it. This position seems to find support in the following cases: *Ogburn-Dalchau Lmbr. Co. v. Taylor* (Tex. Civ. App.), 126 S. W., 48; *Brunswick Gro. Co. v. Lamar*, 116 Ga., 1-7, 42 S. E., 366; *Redmond v. Smock*, 28 Ind., 365.

In the last case, at page 370, the Indiana court uses this language:

"The taking possession of the goods and storeroom, and treating them as their own, and selling them in their own names by the appellees, after the abandonment by the appellants, was, under the authorities, a rescission of the contract."

In the Georgia case cited, page 7, 42 S. E., 368, appears the following:

"There is no authority or precedent in law for the course pursued by plaintiff, after the alleged violation by the defendants of their contract, in continuing to conduct the business for nearly a year, buying new goods, opening additional accounts (many of which were admitted to have been bad), and keeping traveling salesmen on the road for the purpose of selling the goods."

It appears to be defendant's theory that he is conducting the store as the agent of the plaintiff, and that he holds it ready to be turned over, under the contract, when the terms of the contract shall have been carried out, and when he shall have been paid for his services and disbursements as such agent. In other words, he apparently is proceeding upon the theory that he has performed his part of the contract of sale, and therefore may hold the property subject to the buyer's order, and recover the full agreed price, or perhaps that he may sell it for the buyers and then recover the difference between the proceeds of the sale and the agreed price; but his conduct, as admitted in his answer, will not admit of the application of either of these rules granting the antecedent facts

would warrant their application. In *Ogburn Co. v. Taylor, supra,* it is held that the seller's right to retain the property for the buyer and sue for the price, where the latter refuses to receive and pay for the goods sold, involves the continued recognition of the buyer's title to the goods, and, on a claim for damages for a breach of contract, the seller must hold all the property ready for delivery upon the buyer's demand, upon an offer of full payment, and is not entitled to pursue such remedy if he has placed any part of it beyond his control.

It will be seen from what we have already stated that under defendant's answer he admits having taken possession of the stock of goods, and from April 21st to July 16th, a period of eighty-five or eighty-six days, he continued to sell goods at retail, and to replenish the stock as it seemed to him the requirements of the business demanded. There is nothing in the pleadings to indicate just what these retail sales and these purchases by the defendant aggregated, but it is charged in the complaint that the defendant represented that the daily sales amounted to $80. Taking this for a basis, during the eighty-five or eighty-six days that he held the stock of goods before filing his answer, he would have disposed of almost $7,000 worth of goods, and if he kept the stock up, would have purchased many thousands of dollars' worth. At any rate, we may safely assume that a very substantial portion of the original stock of goods had been disposed of by the defendant after he took possession, on May 21st, and before he filed his answer, on July 16th, and the stock must have undergone a substantial change. No authority has been called to our attention, and we know of none, holding that under the circumstances here related, a vendor has the right to sue on the contract or to bring an equitable action for its enforcement. By repossessing himself of the goods, and in all respects treating them as his own, selling them in the customary course of business, as he admits in his an-

swer he did do, the defendant should be held to his action in damages for a breach of the contract, and this would be true even granting the title to the goods had, before the breach of the contract, vested in Ford, the vendee.

The defendant had every opportunity to set up a counter-claim for damages for the breach of the contract. For reasons satisfactory to himself (presumably because he believed the stock of goods to be worth as much or more than the sum which, under the agreement, he was to receive for it) he waived this, his only available remedy, and the judgment of the trial court must be affirmed as to the $2,500 item.

3. Whether the plaintiff was entitled to a judgment on the pleadings for the $127.04, which he alleges he left in the cash register, depends upon the sufficiency of defendant's answer, which reads as follows:

"The defendant, answering, says that as to that portion of the complaint which avers that the plaintiff, upon taking possession of said store on April 21, 1910, placed the sum of $127.04 in cash in the register of said store for the purpose of making change, he has not sufficient knowledge or information on which to base a belief, and therefore prays full and strict proof in respect thereto."

While the language of this denial may be subject to criticism, we think it is sufficient to raise an issue, and that it cannot fairly be said to constitute an admission that this sum of money was left in the cash drawer by Ford and retained by McCrea. Therefore, in the absence of all proof, the trial court ought not to have awarded plaintiff judgment for this sum, and its judgment must be accordingly modified.

The case is remanded, with directions to the trial court to enter judgment for the plaintiff and against the defendant for the sum of $2,500, with interest thereon from April 21st, 1910. As to the $127.04, the respective

parties will be permitted to amend their pleadings as they may be advised, or they may try the issue joined by the pleadings as now framed.

*Remanded with Directions.*