THE PILLSBURY FLOUR MILLS COMPANY *v.* WALSH
ET AL.

[No. 8,729.    Filed November 5, 1915.]

1. JUDGMENT.—*Arrest of Judgment.*—The only order or judgment necessary where a motion in arrest is sustained is an order arresting the judgment, and in such event each party pays his own costs and the plaintiff may proceed *de novo* in a fresh action.    p. 82.

2. APPEAL.—*Orders Appealable.*—*Arrest of Judgment.*—An order in arrest of judgment puts an end to the case in the court below, and is a disposition thereof from which an appeal will lie.    p. 83.

3. SALES.—*Breach of Contract.*—*Remedy of Seller.*—On the purchaser's breach of a contract of sale of goods the seller may retain or store the property as and for the purchaser and sue him on the contract for the entire purchase price, or he may sell the goods for

and as the agent of the purchaser and recover from him the difference between the amount obtained and the contract price, or he may keep the property as his own and recover the difference between the contract price and market price at the time and place of delivery. p. 83.

4. SALES.—*Anticipatory Breach of Contract.—Remedy of Seller.*—In cases where the doctrine of anticipatory breach of contract is applicable, the seller of goods, on the repudiation of the contract by the purchaser, may accept the repudiation and treat the contract as rescinded for all purposes except that of predicating damages thereon for its breach, and may then, before the time of performance, sue for damages for an anticipatory breach, in which event the measure of damages is ordinarily the difference between the contract price and the price at the place of delivery at the time of the repudiation. p. 84.

5. SALES.—*Breach of Contract.—Action by Seller.—Complaint.*— Where, on the purchaser's breach of a contract for the sale of goods, the seller has chosen either to retain or store the property as and for the purchaser, or to sell the same for and as the agent of the purchaser, the complaint in an action for damages against the purchaser must allege facts showing the seller's right to the remedy chosen, and in either case that possession of the property was retained for the purchaser, and, if sale of the property has been made, that such sale was made by the seller for and as the agent of the purchaser after proper notice of intention to sell; but an exception as to notice exists in cases where the property is of a perishable nature. p. 84.

6. SALES.—*Breach of Contract.—Remedy of Seller.*—Where, on the purchaser's breach of a contract for the sale of goods, the seller elects to keep the property as his own and recover the difference between the contract price and the market price at the time and place of delivery, it is immaterial whether the seller keeps or sells the property so retained, or at what price it is sold, if he sells same. p. 86.

7. PLEADING.—*Sufficiency.—Aider by Evidence.*—The sufficiency of a pleading, either on demurrer or on a motion in arrest of judgment, must be determined from its own averments without reference to the evidence. p. 88.

8. JUDGMENT.—*Arrest of Judgment.*—The power to arrest a judgment is inherent in all courts of general common-law jurisdiction, and the exercise of such power is a means by which the court or judge refuses to give a judgment in a cause, though it be regularly decided, where it appears either that no cause of action exists, that the cause of action is not set forth with precision or accuracy, or that a judgment rendered in favor of the prevailing party would be erroneous or reversible; and the motion for arrest is in the nature of a demurrer to the facts of the whole case as presented by the record, exclusive of the evidence given on the trial, and is an appeal to the

law for want of some essential without which a judgment thereon would be erroneous. p. 88.

9. JUDGMENT.—*Arrest of Judgment.*—Generally a judgment will not be arrested if there is one good count to which the verdict can be applied.  pp. 89, 90.

10. SALES.—*Breach of Contract.*—*Special Damages.*—*Pleading.*— *Proof.*—If special damages are relied on by the seller of goods in an action against the purchaser for breach of the contract, the facts on which they are based must be specially pleaded, but those damages ordinarily flowing from the breach of the contract complained of are provable under a general averment that the plaintiff was damaged in a specified sum by the breach of the contract sued on. p. 90.

11. PLEADING.—*General and Special Averments.*—*Inconsistency.*— Specific averments, when inconsistent with a general averment, will control, and in such case the sufficiency of the pleading will be determined from the specific averments.  p. 91.

12. SALES.—*Breach of Contract.*—*Complaint.*—*Sufficiency on Motion in Arrest of Judgment.*—A paragraph of complaint against a purchaser for his breach of a contract for 500 barrels of flour, alleging that 275 barrels were received and paid for by the purchaser, that the remaining 225 barrels were shipped to purchaser, who refused without cause to accept same, and that on account of such refusal plaintiff was "compelled to and did sell the flour for the best price obtainable at that time," and that the flour was sold at a certain price, though not directly averring that the flour was sold at the market price at the time and place of delivery, warranted the inference that such was the case, and was sufficient as against a motion in arrest of the judgment.  p. 91.

13. PLEADING.—*Complaint.*—*Attack by Motion in Arrest of Judgment.*—A complaint is subject to attack by a motion in arrest of judgment only where its defects are not cured by the verdict, or the statute of amendments, or are not waived by a failure to demur.  p. 92.

14. PLEADING.—*Complaint.*—*Failure to Demur.*—*Motion in Arrest of Judgment.*—*Review.*—Where the defect in a complaint consists merely in the omission of some averment which, if present in the complaint, would make a good cause of action, a failure to demur under §§344, 348 Burns 1914, Acts 1911 p. 415, waives such defect or omission, and, in determining whether a motion in arrest of judgment was properly sustained, the court on appeal must treat the complaint as sufficient to meet the proper proof and will not look to the evidence to see whether such proof was in fact made. p. 93.

15. APPEAL.—*Questions for Review.*—*Arrest of Judgment.*—*Motion for New Trial.*—Where, on appeal from an order in arrest of judgment, the appellant has incorporated in the record appellee's motion for a new trial, filed prior to the motion in arrest, containing

the assignment that the verdict is not sustained by sufficient evidence, and the appellee contends that there was a failure to prove certain essentials claimed to have been omitted from the averments of the complaint, the court on reversing the order in arrest of judgment, should determine whether the evidence is sufficient upon which to rest a judgment on the verdict. p. 94.

16. SALES.—*Breach of Contract.—Action Against Purchaser.—Evidence.*—Paragraphs of complaint against the purchaser of flour proceeding on the theory that plaintiff manufactured the flour according to the terms of the contract of sale, that plaintiff was at all times ready and willing to perform all the conditions of the contract on its part to be performed, and that at the time fixed for delivery plaintiff had the flour on hand and was ready and willing to deliver in compliance with the contract, were not established by evidence showing that no flour was manufactured for delivery under such contract, but that when the order was received plaintiff bought the wheat necessary to make the flour, and that on being notified that purchaser would not take the flour plaintiff cancelled the order and charged purchaser with the difference between what had been paid for the wheat and what could be realized for the flour. p. 95.

17. SALES.—*Breach of Contract.—Action Against Purchaser.—Evidence.*—A verdict for plaintiff based on paragraphs of complaint charging that plaintiff shipped flour to a purchaser in pursuance to the contract, which the latter refused to accept, and that plaintiff was compelled to and did sell the flour at the best price obtainable for a stated sum, was sustained by sufficient evidence, where the shipment of the flour to the place designated, and its refusal, were shown, and the evidence as to the subsequent sale of the flour by plaintiff was of such character as to justify the jury in inferring the market price of the flour in question at the time and place of its delivery under the contract. p. 96.

From Superior Court of Vanderburgh County; *F. M. Hostetter*, Judge.

Action by The Pillsbury Flour Mills Company against William P. Walsh and another. Verdict for plaintiff, and from an order in arrest of the judgment, the plaintiff appeals. *Reversed.*

*Woodfin D. Robinson* and *William E. Stilwell*, for appellant.

*John R. Brill, John W. Brady* and *Frank H. Hatfield*, for appellees.

HOTTEL, J.—This is an appeal from a judgment in

appellees' favor in an action brought by appellant to recover damages for breach of contract. The complaint as originally filed was in two paragraphs, each predicated on a written contract for the sale of flour. The allegations of the first paragraph necessary to an understanding of the questions herein discussed are in substance as follows: On October 17, 1910, appellant sold to appellees 1,000 barrels of "XXXX" patent flour at $5 a barrel, to be paid for in cash on delivery at Evansville on or about May 1, 1911. In the sale and purchase of the flour appellant and appellees entered into a written contract filed with and made a part of such paragraph. On March 13, 1911, appellees repudiated the contract and advised appellant by letter that they refused to accept any of the flour so purchased by them. On May 1, 1911, appellant had on hand said 1,000 barrels of flour and, was then ready and willing to deliver it in compliance with the terms of said contract. Appellees then refused, and have continuously since said date refused, to accept and pay for the flour pursuant to the agreement. At the time of the delivery, May 1, 1911, the flour was worth only $4 a barrel and appellant was compelled to and did sell the same at that price. Appellant was at all times ready and willing to perform all the conditions of the contract on his part to be performed and appellees at all times, after March 13, 1911, refused to comply with the terms of said contract and refused to accept and receive said flour and in all respects repudiated said contract all to appellant's damage in the sum of $1,000. The contract filed with this paragraph is as follows:

Pillsbury-Washburn Flour Mills Co., Ltd.
Agreement made at...............
No. 517.    Date 10-17, 1911.
Sold to Walsh Baking Co.

Address................
Ship to Evansville, Ind.
Via................
From................
When:  May, 1911.
Terms:  A.D.
Number
Packages.    Size.    Kind.    Brand.    Price.
1000 bbl.          bulk      XXXX Patent  5.00
Del. at Evansville.
Scott, Salesman.

In consideration of above terms, I hereby purchase and agree to take above goods.
Signature of Purchaser,   Walsh Bak. Co.

W.  P.  Walsh.

The second paragraph is substantially the same as the first, except it is predicated on a contract of date of October 12, 1910, for 500 barrels of flour at $5.15 a barrel, to be delivered at Evansville March 3, or 4, 1911, and alleging that 275 barrels of such purchase by appellees were shipped to them at Evansville and were paid for by them according to the terms of said contract; that afterwards, to-wit, on March __, 1911, appellant shipped to appellees at Evansville the balance of the flour so purchased by them, to-wit, 225 barrels; that such flour arrived at Evansville in due time and appellees, without any cause whatever, refused to accept and receive said flour and ever thereafter refused to accept and pay for said flour pursuant to said contract; that on account of appellees' refusal to accept and pay for said flour "appellant was compelled to and did sell said flour at the best price obtainable at that time; that by the terms of their contract appellees agreed to pay $5.15 a barrel for the flour, and appellant, on account of their refusal to accept and pay for said flour as aforesaid, was compelled to and did sell said

flour at and for the price of $4.25 a barrel." The third paragraph is substantially the same as the first, except it alleged that the contract for the sale of the 1,000 barrels of flour was verbal and that a memorandum of such sale was at the time signed by the parties. The fourth paragraph is substantially the same as the second, except it alleges a verbal sale and purchase of the 500 barrels of flour and omits the averment that appellant "was compelled to and did sell said flour for the best price obtainable at that time."

To the third and fourth paragraphs appellees filed a demurrer for want of facts which was overruled. There was an answer in four paragraphs to each paragraph of complaint and a reply in general denial. A trial by jury resulted in a verdict in appellant's favor. A motion for new trial filed by appellees was overruled. Appellees then filed a motion in arrest of judgment which motion was sustained and the court entered a final order that appellant "take nothing by its action and that judgment on the verdict herein rendered be arrested, and forever rest." From this final order appellant appeals and assigns as error the court's ruling on the motion in arrest of judgment and the action of the court in rendering the final order.

We are first met with an insistence by appellees that the words of the final order, "that the plaintiff take nothing," are mere surplusage and should

1.    be disregarded; that on a motion in arrest neither party is entitled to a judgment against the other, and hence that such an order is not one from which an appeal will lie. It is true that where a motion in arrest of judgment is sustained no judgment for either party is contemplated. The only order or judgment necessary in such case is an order arresting the judgment. "Each party pays his own

costs and the plaintiff is at liberty to proceed *de novo* in a fresh action." *Crawford* v. *Crockett* (1876), 55 Ind. 220; *Raber* v. *Jones* (1872), 40 Ind. 436, 441 and cases cited. It seems to be well settled, however, that such an order puts an end to the case in the court below, and is a disposition of the case from which an appeal will lie. *Powell* v. *Kinney* (1843), 6 Blackf. 359, 360; *State* v. *Scott* (1840), 5 Blackf. 460, 461, note; *Daugherty* v. *Midland Steel Co.* (1899), 23 Ind. App. 78, 82, 53 N. E. 844, and cases cited.

In support of the action of the trial court in arresting the judgment it is claimed by appellees that neither paragraph of the complaint states facts sufficient to constitute a cause of action. Our first inquiry, therefore, should be to ascertain what are the essential averments of a complaint for breach of contract for the sale of personal property. The decided cases indicate that in such actions the vendor has his choice of either of at least three remedies, viz., (1) He may retain or store the property as and for the vendee, and sue such vendee on the contract for the entire purchase price. (2) He may sell the property for and as the agent of the vendee, for his, the vendor's, account and recover of the vendee the difference between the contract price and the price obtained on such resale. (3) He may keep the property as his own and recover the difference between the contract price and the market price at the time and place of delivery. *Dwiggins* v. *Clark* (1884), 94 Ind. 49, 53, 48 Am. Rep. 140; *Pittsburgh, etc., R. Co.* v. *Heck* (1875), 50 Ind. 303, 308, 19 Am. Rep. 713; *Ridgley* v. *Mooney* (1896), 16 Ind. App. 362, 366, 45 N. E. 348; *Dill* v. *Mumford* (1898), 19 Ind. App. 609, 612, 49 N. E. 861; *Shipps* v. *Atkinson* (1894), 8 Ind. App. 505, 36 N. E. 375.

While the authorities cited expressly recognize only the three remedies indicated, it occurs to the court that if the doctrine of anticipatory

4. breach of contract is applicable to contracts like the one under consideration, a fourth remedy would be authorized, viz., on the repudiation of the contract by the vendee the vendor may accept such repudiation, and treat the contract as rescinded for all purposes except for the purpose of predicating damages thereon for breach thereof, and if such vendor indicates his election to so treat such repudiation with reasonable promptness thereafter, he may then, before the time of performance, sue for damages as for an anticipatory breach of such contract, in which case he would be entitled to recover the actual damages resulting from the breach, which, ordinarily, would be the difference between the contract price of the goods sold and the price of such goods at the place of delivery but at the time of repudiation. In such case the controlling date in ascertaining the damages would be the date of repudiation of the contract rather than the date of its performance. For the purposes of this case, however, we need not decide whether the doctrine of anticipatory breach of contract has any application to cases of this character because it is apparent from the averments of each paragraph of the complaint that neither of them proceeds on such theory. We therefore leave such question open for decision when the necessity therefor arises.

The vendor's right to pursue either of the first two remedies, above indicated, is dependent on whether the contract has been fully executed

5. by him in so far as complete execution is possible by him, that is to say, the vendor's right to choose either of such remedies depends on whether he has done and performed all that was necessary to

be done and performed by him under the contract, including all the acts necessary to place title and constructive possession in the vendee.   While the vendor in choosing either of such remedies may retain actual possession of the property involved, and, by choosing the second remedy, may also sell such property, yet the averments of the complaint in either of such cases must be such as to show that the vendor retained such possession for the vendee; and where the second remedy, *supra*, is chosen the facts pleaded must also show that the sale of the property was for and as the agent of the vendee, and that such sale was preceded by proper notice of intention to sell. *Dwiggins* v. *Clark*, *supra; Shipps* v. *Atkinson*, *supra; Dill* v. *Mumford*, *supra; Hayden* v. *Demets* (1873), 53 N. Y. 426; *Indianapolis, etc., R. Co.* v. *McGuire* (1878), 62 Ind. 140; *Fell* v. *Muller* (1881), 78 Ind. 507; *Shawhan* v. *Van Nest* (1874), 25 Ohio St. 490, 18 Am. Rep. 313; *Pittsburgh, etc., R. Co.* v. *Heck, supra*.  In the latter case the court at page 306 said:   "It is conceived that in all cases of contracts for the sale of personal property, where it has any market value, the vendor, before he can recover of the vendee the contract price, must have delivered the property to the vendee, or have done such acts as vested the title in the vendee, or would have vested the title in him, if he had consented to accept it; for the law will not tolerate the palpable injustice of permitting the vendor to hold the property and also to recover the price of it."   In *Dwiggins* v. *Clark*, *supra*, 54, the court quotes with approval from *Hayden* v. *Demets, supra*, the following:   "Upon a valid sale of specific chattels, when nothing remains to be done by the vendor except delivery,  whether conditioned upon payment or not, the right of property passes to the vendee, at whose risk it is retained by the vendor.   The same consequence as to title

results from a valid tender, upon an executory contract. Upon the refusal of the vendee to accept and pay the price, the vendor, upon proper notice, may sell the property and recover the difference, or he may sue for the difference between the contract and actual price, in which case he elects to retain the property as his own; or he may recover the contract price, in which case he holds the property as trustee for the vendee, and is bound to deliver it, whenever demanded, upon receiving payment of the price. In selling the property after tender and refusal, the vendor acts as the agent and trustee of the vendee, to whom the title is deemed to have passed by the tender. The right of the vendor to recover the price of the goods, if he chooses to risk the solvency of the vendee, necessarily results.''

It appears that in some jurisdictions the notice mentioned in connection with the second remedy, *supra*, is held to be unnecessary, but the great weight of authority, including the decisions of both courts of appeal of our own State, approves the rule requiring such notice except in cases where the goods are of a perishable nature. *Redmond* v. *Smock* (1867) 28 Ind. 365; *Ridgley* v. *Mooney, supra; Dill* v. *Mumford, supra.*

The third remedy, above indicated, unlike the other two, contemplates that title to the property, covered by the breached contract sued on,

6. remains in the vendor, or at least is not transferred to the vendee under such contract, and in such case after the vendee's refusal to carry out the contract and pay for such goods, and after the time of performance has passed, it is wholly immaterial whether the vendor keeps or sells the property so retained or at what price he sells, if he sells; because the rule of damages in such cases is the actual injury or damage sustained, which ordi-

narily is the difference between the contract price and the market value of the property at the time and place of delivery.    See *Dill* v. *Mumford, supra,* 612; and other cases cited, *supra.*

In the instant case it is not claimed by either appellant or appellees that either paragraph of the complaint seeks to recover the contract price for the flour sold, and hence the insufficiency of either of such paragraphs to entitle appellant to the first remedy, *supra,* need not be considered. It is claimed, however, by appellees that neither paragraph of the complaint states a cause of action for the reason that the market value of the flour at the time and place of delivery, or a preliminary notice to resell, is not alleged or shown in either paragraph.    In answer to this contention appellant asserts, in effect, that each paragraph proceeds on the theory that the contract sued on was executory; that both title and possession to the flour remained in the vendor and, hence, that it was not necessary to allege a notice to resell.   By this concession appellant eliminates from its contention any claim that either paragraph states facts sufficient to entitle it to either the first or second remedy, *supra.*  The only question left for our determination therefore is whether the several paragraphs of complaint state facts sufficient to state a cause of action  entitling appellant to the third remedy above indicated.  It is, in effect, conceded by appellant that neither paragraph of its complaint expressly avers the market value of flour at the time and place of delivery expressed in the contract sued on, but it is insisted that such omitted averment may be implied from the other averments of such respective paragraphs; that taking each paragraph in its entirety, the complaint is sufficient to bar another action and hence that the defect or omission, if any,

was cured by the verdict, the statute of amendments and failure to demur; and that proof was in fact given without objection, proving such omitted averments. In answer to this last contention it is sufficient to say that the sufficiency of a pleading must be determined from its own averments without reference to the evidence. *Dill* v. *Mumford, supra; Pape* v. *Kaough* (1899), 23 Ind. App. 525, 529, 55 N. E. 775; *Spencer* v. *Spencer* (1894), 136 Ind. 414, 36 N. E. 210; *American Plate Glass Co.* v. *Nicoson* (1905), 34 Ind. App. 643, 656, 73 N. E. 625. There may be and, in fact, is some conflict in the decided cases as to whether, for the purpose of determining whether harm has resulted from an erroneous ruling on a demurrer to a pleading, the appellate tribunal should look to the record to see whether evidence was in fact offered and heard by the trial court, without objection, on the issue which should have been tendered by an averment necessary to, but absent from, such pleading so held sufficient against demurrer; but all the cases hold that the question of the sufficiency of the pleading against demurrer must, of course, be determined from its own averments alone. *Chicago, etc., R. Co.* v. *Chaney* (1912), 50 Ind. App. 106, 97 N. E. 181. So likewise in determining the sufficiency of the complaint against a motion in arrest of judgment, this court will look to the averments of the complaint alone and not to the evidence.

Such a motion is of common-law origin, and the power to arrest a judgment is inherent in all courts of general common-law jurisdiction and the exercise of such power at common law "is the method by which a court or judge refuses to give judgment in a cause, though it be regularly decided, where it appears either that no cause of ac-

tion exists, that the cause of action is not set forth
with precision or accuracy, or that it appears from
the record that if judgment were rendered in favor
of the prevailing party it would be erroneous or re-
versible. The motion is in the nature of a demurrer
to the facts of the whole case as presented by the
record, and is an appeal to the law, for want of
some essential, without which a judgment or sen-
tence thereon becomes erroneous. It does not
reach the sentence or judgment itself, * * *
the whole record is brought under review, and the
court may amend the record before deciding the mo-
tion. Matters outside the record will not be con-
sidered, nor can evidence be introduced to support
the application. The record consists not only of
what is written on the record book and authenti-
cated by the judge, but also all indictment plead-
ings and papers referred to by the record book and
thereby made a part of the record, and the motion
itself is a part of the record, * * * . The
evidence given on the trial is not part of the record
for this purpose, nor will the sufficiency of
the evidence, or knowledge derived from the
evidence, be considered on a motion in ar-
rest of judgment. * * * Arrest of judgment
was granted at common law where it appeared that
notwithstanding the issue of fact was regularly de-
cided, the complaint was either not actionable in it-
self, or not made with sufficient precision and ac-
curacy. It arose from intrinsic causes appearing up-
on the face of the record. Exceptions moved in ar-
rest of judgment were required to be more glaring
and material than on demurrer, and many inac-
curacies and omissions which would have been fatal
on demurrer were cured by a subsequent verdict."
2 Standard Ency. Proc. 982-989. See also, 23 Cyc
824-834; *Bright* v. *State* (1883), 90 Ind. 343. It is

also the general rule that the judgment will
9. not be arrested "if there be one good count to
which the verdict can be applied; that is, a
motion in arrest will not prevail unless all
the counts are so defective as not to have been
cured by the verdict." 23 Cyc 829. See, also,
*Powell* v. *Bennett* (1892), 131 Ind. 465, 467, 30 N.
E. 518, and cases cited; *Sims* v. *Dame* (1888), 113
Ind. 127, 131, 15 N. E. 217; *Louisville, etc., R. Co.* v.
*Fox* (1885), 101 Ind. 416, 418; *Baddeley* v. *Patter-
son* (1881), 78 Ind. 157, 159; *Spahr* v. *Nicklaus*
(1875), 51 Ind. 221, 223; *Kelsey* v. *Henry* (1874),
48 Ind. 37; *Newell* v. *Downs* (1847), 8 Blackf. 523;
*Gilmore* v. *Ward* (1899), 22 Ind. App. 106, 52 N.
E. 810.

There are expressions contained in some of the
decided cases, especially *Dill* v. *Mumford, supra,*
and *Ridgley* v. *Mooney, supra,* that indicate
10. that a complaint, to be sufficient to entitle the
plaintiff to the third remedy before indicated
herein, must contain an averment of the market
price of the goods sold at the time and place of de-
livery, or the equivalent of such averment. This,
we think, was a correct statement of the law as ap-
plied to those cases, because in each of those cases
the complaint set out specifically the facts on which
damages were predicated and contained no general
averment of damages resulting from the breach of
the contract. In such a case it was necessary that
the specific facts pleaded should contain the aver-
ment indicated or its equivalent. There are other
cases, however, that, by implication at least, hold
that in such respect a complaint will be sufficient
if it contains a general averment that plaintiff was
damaged in a specified amount on account of the
breach of the contract sued on, and that under such
general averment the plaintiff will be permitted to

prove any damages which would usually and ordinarily flow from the breach of a contract of the character of that on which the action is predicated. *Dwiggins* v. *Clark, supra,* 56; *Lindley* v. *Dempsey* (1873), 45 Ind. 246, 248, 249; *Wolf* v. *Schofield* (1871), 38 Ind. 175, 182, 183; *Hadley* v. *Prather* (1878), 64 Ind. 137, 140; *Dunn* v. *Johnson* (1870), 33 Ind. 54; *Shipps* v. *Atkinson, supra.* The authorities all agree, of course, that if special damages are relied on, the facts on which they are based must be specially pleaded, but under the authorities those damages which would usually and ordinarily flow from the breach of contract complained of are provable under a general averment that the plaintiff was damaged in a specified sum by the breach of the contract sued on. To prove such general averment of damages the plaintiff would, of course, be required to make his proof in accord with the law as hereinbefore announced, that is to say, the plaintiff in such case would ordinarily be required to prove the market price of the goods sold at the time and place of delivery.

Each paragraph of complaint in the instant case contains a general averment of damages like or similar to that above set out as contained in the first paragraph. Each paragraph, however, contains specific averments on the same subject, and such averments when inconsistent with a general averment will control, and in such case the sufficiency of the pleading will be determined from the specific averments rather than such general averment (*Atkins* v. *Kattman* [1912], 50 Ind. App. 233, 97 N. E. 174; *F. Bimel Co.* v. *Harter* [1912], 51 Ind. App. 267, 98 N. E. 360; *Chicago, etc., R. Co.* v. *Dinius* [1908], 170 Ind. 222, 84 N. E. 9; *Southern R. Co.* v. *Elliott* [1908], 170 Ind. 273, 82 N. E. 1051; *Cleveland, etc., R. Co.* v.

*Clark* [1912], 51 Ind. App. 392, 97 N. E. 822); but in this case, especially as to the second paragraph of complaint, there is no conflict or inconsistency between the general averment and the special averments on the same subject. Indeed, in said second paragraph, the specific averment that appellant "was compelled to and did sell the flour for the best price obtainable at that time," taken in connection with the other averments of such paragraph that the flour had been shipped to Evansville pursuant to the contract and that it arrived there, is almost the equivalent of the said absent averment. A sale at the best price obtainable would certainly be as high, at least, as the market price. "Best price obtainable" is completely comprehensive and necessarily includes "market price," and the words, "at that time," refer to the time when the flour reached Evansville and was refused, which under the other averments of the complaint was inferentially, if not necessarily, the time when delivery at Evansville was due under the contract. True there is no direct averment that the flour was sold at Evansville, the place of delivery, but we think that an inference that the flour was sold there, reasonable and justifiable in view of the other facts alleged, and hence, under the later decisions of our courts, might be indulged even as against a demurrer. *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99.

Whether, however, such paragraph would be sufficient against demurrer we need not decide, because there is a well-defined distinction between an attack on a complaint by demurrer and an attack by a motion in arrest. This has frequently been recognized and expressed by the decided cases, the latter attack being available only in those cases where the defects are not cured by the

verdict or the statute of amendments or waived by a failure to demur. *Parker* v. *Clayton* (1880), 72 Ind. 307, 308; *McCormick* v. *Mitchell* (1877), 57 Ind. 248, 251, and cases cited; *Jones* v. *Ahrens* (1889), 116 Ind. 490, 491, 19 N. E. 334; *Powell* v. *Bennett, supra; Chapell* v. *Shuee* (1889), 117 Ind. 481, 486, 487, 20 N. E. 417, and cases cited. We believe that, under these cases, the second paragraph of complaint was sufficient against a motion in arrest.

Thus far we have considered the ruling on said motion in the light of the law as it has been expressed before the amendment of §§344, 348 Burns 1908, §§339, 343 R. S. 1881, by the act of 1911. 14. Acts 1911 p. 415, §§344, 348 Burns 1914. Section 348 Burns 1914 provides as follows: "Where any of the matters enumerated in section 85 (§344 Burns 1914) do not appear upon the face of the complaint, the objection (except for the misjoinder of causes), may be taken by answer. *If no such objection is taken, either by demurrer or answer, the defendant shall be deemed to have waived the same, except* (our italics) only the objection to the jurisdiction of the court over the subject of the action; *Provided, however,* That the objection that the action was brought in the wrong county, if not taken by answer or demurrer, shall be deemed to have been waived." Appellees did not demur to either the first or second paragraph of the complaint and hence, under the statute, *supra,* they will be deemed to have waived any defects therein except the objection to the jurisdiction of the court over the subject-matter. Appellees, however, insist that the evidence has been brought into the record and that an examination of it will disclose that no evidence was offered on the omitted averment, and hence that appellant is in no position to complain of the court's

ruling. We have already, in effect, disposed of this contention. We may say further, however, that this court, under the statute, *supra*, will assume that any defect in the pleadings was cured by the evidence, if from the affirmative facts pleaded it might have been so cured. Where the defect consists merely in the omission of some averment which, if present in the complaint, would make a good cause of action, a failure to demur under the statute, *supra*, waives such defect or omission and, as against an attack of the kind here made, the appellate tribunal must treat the pleading as sufficient to admit the proper proof and, in determining whether such motion was properly sustained, will not look to the evidence to see whether such proof was in fact made. In case there was a failure to prove the omitted averment the defendants have their remedy. A motion for new trial seasonably made and containing the ground that the verdict or decision is not sustained by the evidence, in effect, presents the same question.

The sufficiency of the first and second paragraphs of complaint being, in effect, admitted by appellees' failure to demur thereto, it is not necessary for the purposes of the question under consideration that we determine the question of the sufficiency of the other paragraphs. See cases cited, *supra*. The trial court committed error in sustaining the motion in arrest of judgment, and for such error the judgment below must be reversed.

However, as before indicated, appellant has seen fit to incorporate in the record appellees' motion for new trial. The record discloses that such motion was filed before the motion in arrest and, as one of its grounds alleges that the verdict of the jury was not sustained by sufficient evidence. Appellant has also incorporated in the record the

general bill of exceptions containing the evidence and it is contended by appellees that an examination of the evidence will disclose that there was also a failure to prove the necessary averments claimed by appellees to have been omitted from each paragraph of the complaint. Such being the state of the record we feel that in the interest of justice it is not only proper, but that it is the duty of the court, to examine the record with a view of determining whether the evidence is sufficient upon which to rest a judgment on the verdict; because if the evidence is not sufficient for such purpose this court, in reversing the judgment below, instead of ordering the trial court to render judgment on the verdict, may instruct such court to grant the new trial. *Myers* v. *Winona, etc., R. Co.* (1915) 58 Ind. App. 516, 106 N. E. 377; *Inland Steel Co.* v. *Kiessling* (1910), 174 Ind. 630, 634, 91 N. E. 1084; *Childress* v. *Lake Erie, etc., R. Co.* (1914), 182 Ind. 251, 259, 105 N. E. 467. Our examination of the evidence convinces us that appellant wholly failed to prove the averments of either the first or third paragraph of its complaint. It will be observed from the averments contained in each of the paragraphs, hereinbefore indicated, that each proceeds on the theory that appellant manufactured the flour according to the terms of the contract upon which such paragraph was based and, that appellant was at all times ready and willing to perform all the conditions of such contract on its part to be performed; "that on  *  *  *  (May 1, 1911), this plaintiff had on hand said 1,000 barrels of flour and at said time was ready and willing to deliver said flour in compliance with the terms of said contract." Appellant's own evidence in support of these paragraphs was in substance as follows: "We never manufactured the flour to be delivered

under such contract. On the contrary we followed a custom usually followed by us in such cases, viz. When we received appellees' order for the 1,000 barrels of flour we bought the wheat necessary to make the flour to fill such order and afterwards in March when we were notified by appellees that they would not take any more flour we cancelled the order for the 1,000 barrels. We did not manufacture the 1,000 barrels. We received information from Walsh long before the flour was to be delivered that he would not accept it, and then we simply cancelled the order because he had told us in advance that they would not take it. We get telegrams from our salesmen as to the flour they have sold and we immediately buy wheat to protect ourselves. When Walsh refused to take this flour we charged him with the difference between what we had paid and what we could get." This evidence wholly fails to show full performance by appellant of its contract in so far as performance was possible by it and wholly fails to show an ability and readiness to perform at the time and place of performance and hence is not sufficient to support a verdict based on either the first or third paragraphs of complaint.

We next inquire whether the evidence was sufficient to sustain the verdict of the jury on either the second or fourth paragraphs of complaint.

17. The evidence affecting the question on which the controversy turns is substantially as follows: The contract shows that the flour was to be delivered to appellees March 3 or 4, 1911. The flour was delivered and appellees refused to accept or pay for it. Appellees refused to accept any more flour on their orders about March 10. The market value at this time was about 60 cents cheaper, both in Minneapolis and Evansville. The market was the same in Evansville as in Minneapolis, except differ-

ence in freight. At the time appellees repudiated their contract flour was 60 cents cheaper on the barrel in Evansville than it was when it was sold to appellees. Flour is always sold depending on the price of wheat. After appellees' refusal to accept the flour, to wit, on April 3, 1911, appellant notified its agent, Mr. Scott, by wire and by letter to go to Evansville and sell as quickly as he could the 225 barrels of flour then at Evansville on the track and refused by appellees. After receiving these instructions and pursuant thereto Mr. Scott called on Mr. Rastetter, a baker in Evansville, Fred Baker, and Ziliak & Shafer and tried to sell the flour to each of them. He sold the flour to Ziliak & Shafer for $4.25 a barrel, that being the "best price he could obtain there in Evansville".

Appellant's witness, Mr. Smith, testified in substance as follows: The price of flour is controlled by the price of wheat, if wheat goes up or down the price of flour does likewise. There is practically very little variation in the price of flour compared to the price of wheat. The price of wheat in Minneapolis, Minn., in October, 1910, was about $1.06½ cents a bushel. In March, 1911, it was about 94½ cents to 95 cents a bushel. Flour would decline correspondingly. Wheat began to go down shortly after the first of November, 1910. Went down until about the 10th to 15th of March, 1911. One cent a bushel wheat affects the market on flour about five cents per barrel. This would affect the market price of flour everywhere in the markets of the United States. Prices are based f. o. b. Minneapolis with freight added to all points.

The jury returned a verdict for appellant in the sum of $112.50. Appellees, in effect, admit that the jury was properly instructed on the measure of dam-

ages, but insist that there was no evidence showing the market value of flour in Evansville at the time provided in the contract for delivery. It is true that each paragraph proceeds on the theory that appellant did and performed all that it was required to do or perform under the contract and that appellees refused performance after performance was due on their part. In such case, as before indicated in this opinion, the time of performance of the contract by delivery of the flour, rather than the time of repudiation of the contract is controlling in fixing the amount of damages resulting from appellees' failure to perform. However, the evidence shows a close proximity of these dates and there was evidence tending to show the entire range of the decline of wheat from the time of the making of the contract up to and beyond the time of delivery and, also tending to show that the market price of flour is fixed by the market price of wheat. Appellant's agent, Scott, also testified that he sold the flour for all he could obtain for it in Evansville. Taking the evidence in its entirety we think it was sufficient to justify the jury in inferring the market price of the flour in question at the time and place of its delivery under the contract, and hence sufficient to afford the jury a proper basis upon which to estimate appellant's damage for the breach of its contract, within the meaning of the law as given by the trial court and expressed in the decisions herein cited. Such being the case this court would not be warranted in directing a new trial on account of the insufficiency of the evidence. The judgment below is therefore reversed with instructions to the trial court to render judgment on the verdict of the jury and for such other proceedings as may be proper and consistent with this opinion.

NOTE.—Reported in 110 N. E. 96. On right to recover purchase

price where purchaser wrongfully repudiates his contract, see 51 L. R. A. (N. S.) 735. On resale to fix damages for refusal of purchaser to accept goods, see 42 L. R. A. (N. S.) 669. Motions in arrest of judgment as waiver of right to move for new trial, see Ann. Cas. 1914 B 612. See, also, under (1) 23 Cyc 834, 835; (2) 3 C. J. 509; (3) 35 Cyc 520, 536, 583; (4) 35 Cyc 583, 592; (5) 35 Cyc 525, 586; (6) 35 Cyc 598; (7) 31 Cyc 322; (8) 23 Cyc 824, 827, 834; (9) 23 Cyc 829; (10) 35 Cyc 587; (11) 31 Cyc 85; (13) 23 Cyc 831; (14) 23 Cyc 830; 31 Cyc 720; (15) 3 Cyc 454; (16) 35 Cyc 591.