## TAYLOR v. CAPP ET AL.

[No. 9,657. Filed November 27, 1918.]

1. PLEADING.—*Demurrer.*—*Grounds.*—A variance between the allegations of the complaint and the instrument on which the action is founded is not a ground for demurrer, since the instrument controls, and such allegations will be disregarded. p. 599.
2. SALES.—*Buyer's Breach of Contract.*—*Seller's Remedies.*— Where there has been a breach of contract for the sale of personal property by the buyer, the seller may retain or store the property for the vendee and recover the entire purchase price, he may sell the property for and as the vendee's agent and recover the difference between the contract price and the resale price, or he may keep the property as his own and recover the difference between the contract price and the market price at the time and place of delivery. p. 599.
3. SALES.—*Buyer's Breach of Contract.*—*Seller's Remedies.*—*Condition Precedent.*—The seller's right, on the buyer's breach of a contract of sale of personal property, to retain the property as and for the buyer and sue for the purchase price, or sell the property as agent of the vendee and recover the difference between the contract price and the price obtained on resale, is dependent on whether the contract has been fully executed by him so far as execution is possible. p. 600.
4. SALES.—*Buyer's Breach of Contract.*—*Action.*—*Complaint.*—On the buyer's breach of contract for the sale of personalty, whether the seller retains the property and sues for the entire purchase price or sells the property as the buyer's agent and sues to recover the difference between the contract price and the price obtained on resale, the complaint must show that the vendor retained possession of the property for the vendee. p. 600.
5. SALES.—*Buyer's Breach of Contract.*—*Action.*—*Complaint.*—

Where the seller, after a breach of contract of sale of personal property, sues for the difference between the contract price and the price obtained on resale, averments in the complaint must show that he retained possession for the vendee and that the sale of the property by the seller was as agent for the buyer after proper notice of intention to sell. p. 600.

6. SALES.—*Buyer's Breach of Contract.—Retention of Property by Seller.—Damages.*—Where the seller, on the buyer's breach of the contract of sale, retains the property as his own, it is immaterial whether he keeps or sells it, since the damages in such a case are those actually sustained, which ordinarily is the difference between the contract price and the market value of the property at the time and place of delivery. p. 601.

7. SALES.—*Breach of Contract by Buyer.—Action.—Complaint.*—Where, after a buyer's breach of the sale contract, the seller keeps the property as his own and sues to recover the difference between the contract price and the market price at the time and place of delivery, the complaint is sufficient though not alleging the market value at the time and place of delivery, where it contains a general averment that plaintiff was damaged in a specific amount. pp. 601, 603.

8. SALES.—*Buyer's Breach of Contract.—Action.—Damages.—Proof.*—Where, after a breach of contract for the sale of personal property, the seller retains the property and sues to recover the difference between the contract price and the market price at the time and place of delivery, if there is no such market value the seller's damages may be otherwise established, and proof of sales of similar property within a reasonable time, and at places reasonably convenient and accessible, may be considered in determining such value, but the mere absence of an immediate demand for the property sold, at the time and place of delivery, would not establish the want of a market value. p. 602.

9. SALES.—*Buyer's Breach of Contract.—Damages.—Proof.*—The mere fact that a quarantine prevents the offering of live stock on the market does not establish the want of market value. p. 603.

10. SALES.—*Breach of Contract.—Action.—Special Damages.—Pleading.*—In an action for breach of a sales contract, if special damages are relied on, the facts on which they are based must be specifically pleaded, as only those damages which would usually flow from the breach of such a contract are provable under a general averment of damages sustained. p. 603.

11. SALES.—*Breach of Contract.—Action by Seller.—Complaint.—Sufficiency.*—In an action for breach of contract of sale, paragraph of complaint *held* sufficient to state a cause of action to recover

of the vendee the difference between the contract price and the price obtained on resale. p. 603.

12. PLEADING.—*Construction.*—*Inferences.*—A fact reasonably inferable from facts directly averred will be given the same force as if directly stated. pp. 604, 605.

13. SALES.—*Breach of Contract.*—*Action by Seller.*—*Complaint.*—*Sufficiency.*—In a seller's action for breach of the contract of sale of personal property, a complaint seeking recovery of the difference between the contract price and the price obtained on resale is fatally defective where it fails to allege that the seller retained possession of the goods for the buyers after the breach of the contract and that he sold the goods as their agent after due notice to them of his intention to sell. p. 604.

14. PLEADING.—*Complaint.*—*Theory.*—A complaint must proceed upon some definite theory, which must be determined from its general scope and tenor. p. 605.

From DeKalb Circuit Court; *Dan M. Link,* Judge.

Action by Jonathan E. Taylor against Charles Capp and another. From a judgment for defendants, the plaintiff appeals. *Reversed.*

*Dudley W. Gleason,* for appellant.
*W. P. Endicott* and *Harold K. Tess,* for appellees.

BATMAN, J.—This is an action by appellant against appellees to recover damages alleged to have been sustained by reason of the breach of a certain contract for the sale of cattle. The complaint is in three paragraphs. The first alleges in substance that on September 21, 1914, appellant entered into a contract with appellees whereby he sold them certain cattle, which were to be delivered on November 1, 1914; that appellees paid appellant thereon the sum of $100, and agreed to pay the remainder of the purchase price at the time of their delivery; that prior to the time for delivering said cattle appellees informed appellant that they did not know just when they could attend and receive the same, and pay the balance of the pur-

chase price therefor; that appellant, on November 1, 1914, and for a long time thereafter, was ready, willing and able to deliver said cattle to appellees in pursuance of said contract, and to perform all the conditions thereof to be performed by him, and then and there demanded of appellees that they attend and receive said cattle, and pay the balance due therefor, all of which they refused to do; that by reason of the premises he was damaged in the sum of $500.

The second paragraph contains the same allegations as the first, and in addition thereto the following: That at the time said contract was entered into appellant was the owner of said cattle, and had some of them in his pasture lot in the State of Michigan, and the remainder thereof in his pasture lot in the State of Indiana, where appellees inspected the same, and where they were kept by appellant until the time for their delivery; that on the first and second days of November, 1914, he was the owner of said cattle, and on said days was able, ready and willing to deliver the same to appellees, and requested them to attend and receive the same, which they neglected and refused to do; that for a long time thereafter he held said cattle and requested appellees to attend and receive the same, which they refused to do; that if appellees had received said cattle and paid for them, as provided in said contract, he would have received the sum of $3,500 therefor; that on November 3, 1914, a quarantine was placed upon the States of Indiana and Michigan, which prevented him from moving said cattle from his said pasture lots; that appellant and appellees had been expecting said quarantine for a long time prior to said breach of the contract in suit; that during the time of said quarantine the weather

was very bad, and said cattle shrunk in weight, and appellant was put to great expense in feeding and caring for the same; that said cattle were retained by him for appellees with their knowledge for a long time; that, by reason of said quarantine, the cattle market was much lower from November 1, 1914, to January 1, 1915, than the price he was to receive for said cattle, under the terms of said contract; that for a long time after said breach there was no market at all therefor; that, after holding them for seven weeks after November 1, 1914, and notifying appellees that he would resell the same, unless they should attend and receive them, he did resell said cattle at the first opportunity to different persons, receiving the highest market price therefor, to wit, $2,900, which was much less than the contract price; that the deficiency arising from said resale, and the cost of feeding and caring for said cattle, amounted to $800, no part of which has been paid by appellees; and that by reason of the premises he has been damaged in said sum.

The third paragraph contains the same allegations as the first, and in addition thereto the following: That at the time said contract was entered into the plaintiff was the owner of said cattle, and had some of them in his pasture lot in the State of Michigan, and the balance of them in his pasture lot in the State of Indiana, where the defendants inspected the same before and at the time of making said contract; that said cattle were kept by him in said pasture lots continuously until the time for the delivery thereof to the defendants; that on November 1, 1914, which was on Sunday, and on November 2, 1914, he was still the owner of said cattle, which were still in said pasture lots as aforesaid, and that on said days, and during

all parts thereof, he was ready, able and willing to deliver said cattle to defendants, and requested them to attend and receive the same, and pay the remainder of the purchase price therefor, all of which they neglected and refused to do; that immediately after the failure and refusal of appellees to accept said cattle and pay for the same, as aforesaid, and before appellant had an opportunity to make sale thereof in the market, or to any other person or persons, the market for said cattle greatly declined, so that the market price therefor was not more than one-half of that which appellees had agreed to pay for the same; that said decline in the market was caused largely by the fact that the government of the United States at that time ordered and declared a quarantine upon shipping and moving cattle from Michigan and Indiana into other states; that long before said quarantine was so declared, and long before the time for the delivery of said cattle, appellees had full notice and knowledge that such quarantine was likely to be so declared; that, being unable to sell said cattle after the failure of appellees to receive the same as aforesaid, except at said greatly reduced price, he retained the same, and fed and cared for them until the — day of January, 1915, when he sold the same for $2,900, which was the highest and best price he was able to obtain therefor at any time after appellees' failure to receive the same as aforesaid; that while holding said cattle and endeavoring to sell the same, as aforesaid, he was required to expend and did expend the sum of $400 in feeding them; that during said time the weather was bad, and, by reason thereof and without fault on his part, said cattle shrunk greatly in weight; that if appellees had received said cattle and

paid therefor, as provided in said contract, he would have received $3,500 for the same; and that by reason of the premises he has sustained damages in the sum of $1,000.

The contract in suit was made a part of each paragraph of complaint as an exhibit. Appellees filed a demurrer to the first paragraph of the complaint for want of facts, and also a like demurrer to the second and third paragraphs thereof. These demurrers were each sustained, and appellant refused to plead further. Judgment was thereupon rendered in favor of appellees for costs. Appellant has assigned the action of the court in sustaining said demurrers as the sole errors on which he relies for reversal.

It is claimed with reference to the first paragraph of complaint that the written contract filed therewith as an exhibit is at variance with the description of the same as set forth in the body of said paragraph. Where there is a variance between the allegations of the complaint and the instrument on which the action is founded, the provisions of the instrument control, and such allegations will be disregarded. *Indiana, etc., Assn.* v. *Plank* (1898), 152 Ind. 197, 52 N. E. 991. Such a variance, therefore, would not be a ground for demurrer.

As preliminary to a further consideration of the sufficiency of the several paragraphs of the complaint, it may be well to note that, where there has been a breach of contract for the sale of personal property, three remedies are available to the vendor, viz.: (1) He may retain or store the property as and for the vendee, and sue such vendee on the contract for the entire purchase price. (2) He may sell the property for and as the agent of the

vendee, and apply the proceeds on his (the vendor's) account against the vendee, and recover of the vendee the difference between the contract price and the price obtained on such resale.   (3) He may keep the property as his own and recover the difference between the contract price and the market price at the time and place of delivery.   The vendor's right to pursue either of the first two remedies, above indicated, is dependent on whether the contract has been fully executed by him in so far as complete execution is possible by him; that is to say, the vendor's right to choose either of such remedies depends on whether he has done and performed all that was necessary to be done and performed by him under the contract, including all the acts necessary to place title and constructive possession in the vendee. While the vendor, in choosing either of such remedies, may retain actual possession of the property involved, and, by choosing the second remedy, may also sell such property, yet the averments in the complaint in either of such cases must be such as to show that the vendor retained such possession for the vendee; and where the second remedy, *supra,* is chosen, the facts pleaded must also show that the sale of the property was for and as the agent of the vendee, and that such sale was preceded by proper notice of intention to sell. *Pillsbury, etc., Co.* v. *Walsh* (1915), 60 Ind. App. 76, 110 N. E. 96, and cases there cited.

It is obvious that the first paragraph of complaint does not seek to recover the contract price of the cattle sold, nor does it allege that he retained possession of the same for appellees, after the alleged breach of the contract, or that he sold them as their

agent, after due notice. It is therefore not good as an attempt to enforce either the first or second remedies stated *supra*.

But it remains to be determined whether said first paragraph states facts sufficient to constitute a cause of action, when considered as an effort to en-

6. force the third remedy stated *supra*. This remedy, unlike the other two, contemplates that title to the property, covered by the breached contract sued on, remains in the vendor, or at least is not transferred to the vendee under such contract, and in such case, after the vendee's refusal to carry out the contract and pay for such goods, and after the time of performance has passed, it is wholly immaterial whether the vendor keeps or sells the property so retained, or at what price he sells, if he sells, because the rule of damages in such cases is the actual injury or damages sustained, which ordinarily is the difference between the contract price and the market value of the property at the time and place of delivery. *Pillsbury, etc., Co.* v. *Walsh, supra.* But

7. appellees contend in effect that the first paragraph of the complaint is insufficient, when considered as an effort to enforce said third remedy, for the reason that the market value of the cattle at the time and place of delivery is not alleged. There are expressions in some former decisions of this court which tend to support this contention. *Ridgley* v. *Mooney* (1896), 16 Ind. App. 362, 45 N. E. 348; *Dill* v. *Mumford* (1898), 19 Ind. App. 609, 49 N. E. 861. There are, however, other cases in this state that hold, by implication at least, that such an allegation is not necessary, where the complaint contains a general averment that the plaintiff was damaged in a

specific amount on account of the breach of the contract sued on, and that under such general averment the plaintiff will be permitted to prove any damages which would usually and ordinarily flow from the breach of a contract of the character on which the action is predicated. *Wolf* v. *Schofield* (1871), 38 Ind. 175; *Lindley* v. *Dempsey* (1873), 45 Ind. 246; *Hadley* v. *Prather* (1878), 64 Ind. 137; *Dwiggins* v. *Clark* (1884), 94 Ind. 49, 48 Am. Rep. 140; *Richter* v. *Meyers* (1892), 5 Ind. App. 33, 31 N. E. 582; *Shipps* v. *Atkinson* (1893), 8 Ind. App. 505, 36 N. E. 375; *Pillsbury, etc., Co.* v. *Walsh, supra.* This also appears to be the rule in other jurisdictions. 35 Cyc 587; 19 Ency. Pl. and Pr. 66; *Peters* v. *Cooper* (1893), 95 Mich. 191, 54 N. W. 694. Inasmuch as it appears to be a reasonable rule, unattended by any hardship on the defendant, we are of the opinion that it ought to be expressly affirmed, and any case to the contrary ought to be overruled in that regard. The adoption and maintenance of this rule would not relieve a plaintiff from establishing his damages in accord with the law as indicated, which, under a complaint to enforce said third remedy, would ordinarily require proof of the market price of the property sold at the time and place of its delivery. If

8. there was no market price at such time and place, the damages sustained may be otherwise established. *Indiana Canning Co.* v. *Priest* (1896), 16 Ind. App. 445, 45 N. E. 618; 24 Am. and Eng. Ency. Law 1116. But the fact that the market price was unusually low by reason of existing conditions would not authorize a departure from the general rule. *Dwiggins* v. *Clark, supra.* The mere absence of an immediate demand for the property sold, at

the time and place provided in the contract for its delivery, would not establish the want of a market value, but sales made of similar property within a reasonable time, and at places reasonably convenient and accessible, may be considered in determining such value. 35 Cyc 594; *Dwiggins* v. *Clark, supra; Redhead Bros.* v. *Wyoming, etc., Investment Co.* (1905), 126 Iowa 410, 102 N. W. 144. It is likewise true that the mere fact of a quarantine which prevents the moving of live stock and offering the same on the market would not of itself establish the want of market value. However, if special damages are relied on, the facts on which they are based must be specially pleaded, as only those damages which would usually and ordinarily flow from the breach of such a contract are provable under a general averment. In the instant case the first paragraph of complaint contains a general averment that the plaintiff was damaged in a specific amount by reason of the alleged breach of the contract, and therefore, under the rule announced, is sufficient to state a cause of action, when considered as an effort to enforce said third remedy, without the allegation for which appellees contend.

It will be observed that the second paragraph of the complaint not only alleges a breach of the contract of sale by appellees, but also alleges: "That for a long time thereafter said plaintiff held the said cattle, and requested the said defendants to attend and receive the said cattle, which defendants refused to do. * * * That said cattle were retained by plaintiff for the defendants for a long time, all of which the defendants had notice.

\* \* \* That after holding the said cattle for seven weeks after the first day of November, 1914, and at the first opportunity he had to sell the same, and after notifying the defendants that he would resell said cattle, unless they attended and received the same, this plaintiff did sell said cattle to different persons, receiving the very highest price therefor. Twenty-nine Hundred Dollars, which the market would afford, which was much less than the contract price." It is further alleged that the deficiency arising from said resale amounted to $400; that the expense incident to said resale, including feeding and caring for said cattle, amounted to $400; and that no part thereof has been paid. Demand for $800 damages. These allegations give character to said second paragraph of the complaint, and make it clearly apparent that appellant is thereby attempting to enforce the second remedy stated *supra.* It contains by direct averments all the special facts necessary to state a cause of action on such theory, except that he made sale of the cattle for and as the agent of appellees, but 12. we believe this fact may be reasonably inferred from the facts directly averred. It will therefore be given the same force as if directly stated. *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99. For the reasons indicated, we conclude that the court erred in sustaining appellees' demurrer to the second paragraph of the complaint.

An inspection of the third paragraph of the complaint discloses that it contains not only the same allegations as the first paragraph, relating to 13. the execution of the contract in suit and breach thereof by appellees, but also certain allega-

tions with reference to keeping the cattle after such breach and the cost of feeding the same, the decline in the market price and the cause thereof, the time at which they were sold, and the amount received therefor, the amount appellant would have received for the same had the contract not been breached by appellees, and the total loss sustained thereby. It will be observed that the total loss is not based on the difference between the market price and the contract price, but on the difference between the selling price and the contract price, augmented by the amount alleged to have been expended in feeding the cattle after the alleged breach. It is well settled that a complaint must proceed upon some definite theory, and that theory must be determined by its general scope and tenor. *Grand Trunk, etc., R. Co.* v. *Thrift Trust Co.* (1918), 68 Ind. App. 198, 115 N. E. 685, 116 N. E. 756. Applying this rule to the facts alleged, it is clearly apparent that appellant, by said third paragraph of complaint, is seeking to enforce said second remedy stated *supra*. However, it is fatally defective in failing to allege that appellant retained possession of the cattle for appellees after the breach of the contract, or that he sold them as their agent after due notice to them of his intention so to do. *Pillsbury, etc., Co.* v. *Walsh, supra.* The court therefore did not err in sustaining appellee's demurrer to said third paragraph of complaint.

For the reasons stated, the judgment is reversed, with instructions to overrule appellee's demurrer to the first and second paragraphs of the complaint, to grant appellant leave to amend his third paragraph

of complaint, and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 121 N. E. 37. Sales: effect of resale of property in fixing damages on refusal of purchaser to accept goods, 42 L. R. A. (N. S.) 670. See under (2-6) 35 Cyc 520, 525, 531, 583, 592.